# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANDRE M. ADAMS,           :
     Petitioner             :
                           :        No. 1:19-cv-01455
     v.                   :
                           :        (Judge Kane)
SUPERINTENDENT      :
SCI HUNTINGDON, et al.,   :
     Respondents     :

## MEMORANDUM

On August 22, 2019, pro se Petitioner Andre M. Adams ("Petitioner"), who is presently confined at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Following an Order to show cause (Doc. No. 6), and after receiving an extension of time to do so (Doc. Nos. 8, 9), on November 22, 2019, Respondents filed a motion to dismiss (Doc. No. 10) Petitioner's § 2254 petition as untimely. In a Memorandum and Order dated April 27, 2020, the Court concluded that Petitioner's § 2254 petition was timely filed, denied Respondents' motion to dismiss, and directed Respondents to file a response regarding the merits of the petition within twenty-one (21) days. (Doc. Nos. 17, 18.) After receiving an extension of time (Doc. Nos. 19, 20), Respondents filed their response on June 29, 2020 (Doc. No. 21). After receiving an extension of time (Doc. No. 23), Petitioner filed a traverse on August 7, 2020 (Doc. No. 25). Accordingly, Petitioner's § 2254 petition (Doc. No. 1) is ripe for disposition.

I.      **BACKGROUND**

A.      **Petitioner's State Proceedings**

In February and July of 2012, Petitioner was charged with numerous drug trafficking

offenses.  See Commonwealth v. Adams, Docket Nos. CP-14-CR-0000355-2012 & CP-14-CR-

0001228-2012 (Centre C.C.P.).[1]  Petitioner was represented by numerous attorneys during his

criminal proceedings, as set forth by the trial court:

> In the instant case, [Petitioner] was assigned three separate court-appointed
> attorneys in the capacity of either standby counsel or full representation, and met
> with a fourth attorney who refused to accept the court appointment after speaking
> with [Petitioner].  [Petitioner] further sought out at least two additional private
> attorneys throughout the course of his case.  Initially, [Petitioner] appeared at the
> preliminary hearing on docket number 2012-0355 represented by Philip Masorti,
> Esquire, a privately retained attorney.  However, Attorney Masorti did not enter his
> appearance and on February 22, 2012, the Court appointed Edward Blanarik,
> Esquire, to represent [Petitioner].  Approximately two months later, Stephen T.
> O'Hanlon, Esquire, another privately retained attorney, entered his appearance.  On
> July 9, 2012, Attorney O'Hanlon filed a Motion to Withdraw as Counsel, citing
> lack of payment and irreconcilable conflicts.  On July 12, 2012, this Court permitted
> Attorney Blanarik's withdrawal and Daniel Nelson, Esquire, was subsequently
> appointed to represent [Petitioner].
>
> [Petitioner] was arrested on eighteen additional offenses on July 3, 2012,
> which were docketed at 2012-1228.  On July 9, 2012, Attorney Blanarik was
> appointed to represent [Petitioner] on these charges as well.  On August 28, 2012,
> Attorney Blanarik filed a Motion to Withdraw from this case and was permitted to
> do so on August 29, 2012.
>
> On August 6, 2012, [Petitioner's] cases (2012-0355 and 2012-1228) were
> joined.  On August 28, 2012, Attorney Nelson also filed a Motion to Withdraw,
> citing irreconcilable differences of opinions.  A hearing was held on September 13,
> 2012 on an omnibus pretrial motion filed by [Petitioner] and the motions of both
> Attorney O'Hanlon and Attorney Nelson.  At that hearing, regarding his then-

---

[1] In a habeas proceeding, federal courts may take judicial notice of state court records.  See
Minney v. Winstead, Civ. No. 12-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see
also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing
Petitioner's § 2254 petition, the Court takes judicial notice of the publicly-available dockets of
Petitioner's criminal and collateral post-conviction proceedings in the Court of Common Pleas of
Centre County and the Pennsylvania Superior Court.

current counsel, [Petitioner] indicated he believed both Attorney O'Hanlon and Attorney Nelson refused to consider his input and legal research and would not honor his requests to file certain pleadings with the court. [Petitioner] further indicated he believed Attorney Nelson to be inexperienced and incompetent. Regarding his previously appointed and privately retained counsel, [Petitioner] testified he and Attorney Blanarik had "an issue" and he had been unable to pay Attorney Masorti to represent him beyond the preliminary hearing. [Petitioner] also noted although an attempt had been made to appoint Charles J. Kroboth, Jr., Esquire to represent him, after a brief meeting, Attorney Kroboth ultimately declined the appointment. [Petitioner] requested that he be appointed yet another attorney.

(Doc. No. 21-38 at 4-5.) On September 19, 2012, the trial court issued an opinion and order concluding that Petitioner had forfeited his right to court-appointed counsel and appointing Attorney Nelson as standby counsel. (Id. at 5.)

On October 1, 2012, the trial court conducted a hearing regarding Petitioner's request for a continuance of jury selection. (Doc. No. 21-22 at 4.) Attorney Nelson could not be present at the hearing; accordingly, the trial court appointed Karen Muir, Esquire ("Attorney Muir") to represent Petitioner for the purposes of the hearing. (Id.) During the hearing, Petitioner argued that the trial court had forced him to ask for a continuance. (Id. at 4-16.) On October 12, 2012, the trial court conducted a hearing regarding multiple pretrial motions filed by Petitioner. (Doc. No. 21-23.) During the hearing, Petitioner asserted speedy trial violations pursuant to Rule 600 of the Pennsylvania Rules of Criminal Procedure. (Id.) The Commonwealth argued, however, that Petitioner was responsible for delays in his proceedings because of the motions he had filed. (Id.) Subsequently, Petitioner again asked for the appointment of counsel, and the trial court appointed Attorney Nelson to represent Petitioner. (Doc. No. 21-24.)

On December 3, 2012, the parties appeared for jury selection. During jury selection, Petitioner indicated on several occasions that Attorney Nelson was not his attorney and that he was representing himself. (Id. at 3, 10, 12-13,17-18, 22-23, 25.) Petitioner refused to engage in two (2) separate colloquies regarding his right to waive his right to counsel. (Id. at 4-8, 10-13,

3

23.)  The trial court warned Petitioner that he would be removed from jury selection if he became disruptive.  (<u>Id.</u> at 9.)  Ultimately, the trial court concluded that Petitioner would not be present when Attorney Nelson and the Commonwealth selected the jury because of Petitioner's conduct and the absence of a lawful waiver of counsel.  (<u>Id.</u> at 16.)  In response, Petitioner indicated that he could conduct jury selection himself and purported to fire Attorney Nelson.  (<u>Id.</u> at 20-21.)  The court then informed Petitioner that he could remain if he was silent, except for communication with Attorney Nelson.  (<u>Id.</u> at 21.)  Petitioner stated that Attorney Nelson was not his attorney.  (<u>Id.</u> at 22.)  The trial court decided to remove Petitioner from jury selection.  (<u>Id.</u> at 23.)

The trial court, however, identified thirty (30) potential jurors, brought them into the courtroom, and allowed Petitioner to remain, warning him that if he had any outbursts he would be removed.  (<u>Id.</u> at 24-25.)  The trial court denied Petitioner's request to not be present during <u>voir</u> <u>dire</u> because it wanted Petitioner to be present.  (<u>Id.</u> at 25-26.)  The jury was selected with Petitioner present.  (<u>Id.</u> at 26-49.)  Petitioner then asked if he could be taken back to jail.  (<u>Id.</u> at 49.)  The trial court denied Petitioner's request, and Petitioner replied, "I need to go back to jail. I had enough of this."  (<u>Id.</u>)  The trial court asked the jurors to disregard Petitioner's statement. (<u>Id.</u>)  Petitioner disrupted the proceedings again, arguing that the jury was not a jury of his peers because he is black.  (<u>Id.</u> at 50.)  The trial court then provided a cautionary instruction to the jury at Attorney Nelson's request.  (<u>Id.</u> at 50-51.)

Before trial began, the trial court granted Attorney Nelson's motion to withdraw and denied Petitioner's request for another appointed attorney.  (Doc. No.2 1-38 at 5-6.)  On January 10, 2013, following the jury trial, Petitioner was convicted of thirty (30) counts of possession of a controlled substance with intent to deliver, one count of criminal conspiracy, and seven (7)

counts of criminal use of a communication facility.  See Adams, Docket Nos. CP-14-CR-0000355-2012 & CP-14-CR-0001228-2012.  Attorney Muir was appointed to represent Petitioner at sentencing.  On February 12, 2013, the trial court sentenced him to an aggregate term of a minimum of seventy-nine (79) years and a maximum of 158 years' incarceration.  See id.  Petitioner filed a timely appeal to the Superior Court of Pennsylvania.  See id.  On June 15, 2015, the Superior Court vacated Petitioner's judgment of sentence and remanded the matter for resentencing after concluding that the imposed sentence was unconstitutional pursuant to Alleyne v. United States, 570 U.S. 99 (2013).[2]  See Adams v. Miller, No. 767 MDA 2015, 2015 WL 6871185, at *1 (Pa. Super. Ct. Nov. 6, 2015).  On August 25, 2015, the trial court resentenced Petitioner to an aggregate term of a minimum of forty-five (45) years and a maximum of ninety (90) years' incarceration.  See Adams, Docket Nos. CP-14-CR-0000355-2012 & CP-14-CR-0001228-2012.

While his appeal was pending, Petitioner filed a "petition for writ of habeas corpus subjiciendum," arguing that "the criminal statutes he was found guilty of violating are unconstitutional due to the lack of an enacting clause."  See Adams, 2015 WL 6871185, at *1. The trial court denied the petition by an order dated April 17, 2015.  See id.  The trial court also noted that if Petitioner's petition were construed as a petition pursuant to the Post Conviction Relief Act ("PCRA"), it would have been dismissed as premature in light of Petitioner's direct appeal.  See id.  On November 6, 2015, the Superior Court affirmed the trial court's order, noting that Petitioner's claim was cognizable under the PCRA and that his petition, construed as one brought pursuant to the PCRA, was premature.  See id. at *3.

---

[2] In Alleyne, the United States Supreme Court held that "any fact that increases the mandatory minimum [sentence] is an 'element' that must be submitted to the jury."  See Alleyne, 570 U.S. at 102.

5

After resentencing by the trial court, Petitioner appealed his new judgment of sentence to the Superior Court.  See Adams, Docket Nos. CP-14-CR-0000355-2012 & CP-14-CR-0001228-2012.  On December 2, 2015, the Superior Court dismissed his appeal for failure to comply with Pennsylvania Rule of Appellate Procedure 3517.[3]  (Doc. No. 10-1 at 3.)  Petitioner did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania.

The trial court's docket indicates that Petitioner filed a PCRA petition on October 29, 2015.  See Adams, Docket Nos. CP-14-CR-0000355-2012 & CP-14-CR-0001228-2012. Counsel was appointed to represent Petitioner, and after receiving several extensions of time, counsel filed an amended PCRA petition on December 30, 2016.  See id.  Petitioner alleged that appellate counsel was ineffective for failing to raise the following five (5) issues on appeal: (1) Petitioner's Sixth Amendment rights were violated when the trial court forced him to proceed to trial as a pro se defendant; (2) the trial court improperly removed Petitioner from the jury selection process and forced standby counsel to select the jury; (3) Petitioner's right to a speedy and prompt trial was violated; (4) the Commonwealth "engaged in sentencing manipulation by prolonging their investigation so as to increase [the number of] mandatory sentence[s]" against Petitioner; and (5) Petitioner was entrapped as a matter of law.  (Doc. No. 10-5 at 4.)  The PCRA court held an evidentiary hearing regarding Petitioner's claims on August 25, 2017.  (Doc. No. 21-35.)  On September 7, 2017, the PCRA court denied Petitioner's petition.  (Doc. No. 21-36.)

---

[3] Rule 3517 states:

> Whenever a notice of appeal to the Superior Court is filed, the Prothonotary shall send a docketing statement form which shall be completed and returned within ten (10) days in order that the Court shall be able to more efficiently and expeditiously administer the scheduling of argument and submission of cases on appeal.  Failure to file a docketing statement may result in dismissal of the appeal.

Pa. R. App. P. 3517.

On September 24, 2018, the Superior Court affirmed the denial of Petitioner's PCRA petition. (Doc. No. 10-5.)  On July 8, 2019, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal.  (Doc. No. 10-6 at 5.)  Petitioner subsequently filed the instant § 2254 petition on August 22, 2019.  (Doc. No. 1.)

### B. Petitioner's Habeas Claims

Petitioner did not use this Court's form for filing his § 2254 petition and, therefore, it is difficult for the Court to discern the claims for relief that Petitioner is raising.  Respondents assert that Petitioner's § 2254 petition sets forth the following three (3) claims for relief:

1. Appellate counsel was ineffective for failing to assert on direct appeal that Petitioner's Sixth Amendment right to counsel was violated when he was forced to proceed pro se;

2. Appellate counsel was ineffective for failing to assert on direct appeal that Petitioner was improperly removed from jury selection; and

3. Appellate counsel was ineffective for failing to assert on direct appeal that Petitioner's right to a speedy and prompt trial was violated.

(Doc. No. 21 at 13.)  The Court agrees with Respondent that Petitioner has set forth the three (3) claims for relief noted above.[4]

---

[4] In his traverse, Petitioner requests for the first time that the Court "review the five issues waived by Attorney Muir."  (Doc. No. 25 at 5-6.)  These issues include the three (3) set forth supra as well as the following two (2) grounds for relief: (1) whether appellate counsel was ineffective for failing to argue that the Commonwealth "engaged in sentencing manipulation by prolonging their investigation so as to increase the number of mandatory sentences against Petitioner"; and (2) whether appellate counsel was ineffective for failing to argue that Petitioner "was entrapped as a matter of law or as a matter of fact."  (Doc. No. 1 at 6.)  Petitioner, however, has set forth no argument in support of these two grounds for relief in his § 2254 petition and his traverse, and the Court's reading of the § 2254 petition leads to a conclusion that Petitioner did not seek to proceed upon them in the above-captioned case.  These arguments, therefore, are not properly before the Court; accordingly, the Court will not consider them.  See Tyler v. Mitchell, 416 F.3d 500, 504 (6th Cir. 2005) (noting that an argument first presented in the petitioner's "traverse rather than in his habeas petition [] was not properly before the district court"); Martinez v. Nash, No. 05-461, 2006 WL 2241604, at *10 (D.N.J. Aug. 2, 2006) (concluding that traverse was not the proper pleading to raise additional grounds for relief).

## II.     LEGAL STANDARD

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." See Dunn v. Colleran, 247 F.3d 450, 468 (3d Cir. 2001) (quoting Calderon v. Coleman, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  See Engle v. Isaac, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." Id.  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." See 28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

## III.    DISCUSSION

### A.    Standard for Ineffective Assistance of Counsel Claims

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel.  First, the petitioner must show that counsel's performance was deficient.  This requires showing that "counsel's representation fell below an objective standard of reasonableness."  See id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000).  Second, under Strickland, the petitioner must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  See id. at 694.

The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987).  As a result, if a petitioner fails on either prong, he loses.  See Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.").

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law'" for purposes of the AEDPA.  See Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000)).[5]  Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts.  See Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005).

Claims regarding ineffective assistance of appellate counsel are evaluated under the same Strickland standard set forth above.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004).  An attorney's decision about which issues to raise on appeal is a strategic one, and an attorney is not required to raise every possible non-frivolous issue on appeal.  See Smith v. Robbins, 528 U.S. 259, 272 (2000); Albrecht v. Horn, 485 F.3d 103, 138 (3d Cir. 2007); Buehl v. Vaughn, 166 F.3d 163, 174 (3d Cir. 1999).  As a general rule, the presumption of effective assistance by appellate counsel will be overcome "only when ignored issues are clearly stronger than those presented."  See Smith, 528 U.S. at 285.  To establish prejudice, the petitioner must demonstrate a reasonable likelihood that the appellate court would have resolved the case differently if not for counsel's deficiencies.  See United States v. Mannino, 212 F.3d 835, 845 (3d Cir. 2000).

**B.     Ground One**

In Ground One, Petitioner asserts that Attorney Muir was ineffective for failing to assert on direct appeal a claim that Sixth Amendment right to counsel was violated when he was forced to proceed pro se.  (Doc. No. 1 at 8-19.)  Petitioner maintains that he never waived his right to

---

[5] The standard under Pennsylvania law for ineffective assistance of counsel is consistent with the two-prong Strickland analysis.  See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).

counsel and that the trial court never conducted a colloquy pursuant to <u>Faretta v. California</u>, 422

U.S. 806 (1975), to determine whether Petitioner was knowingly waiving his right to counsel.

(<u>Id.</u> at 8-12.)  According to Petitioner, his conviction and sentence would have been vacated had

Attorney Muir raised this claim.  (<u>Id.</u> at 18.)

With respect to this claim, the Superior Court of Pennsylvania stated:

Appellant's first claim concerns whether appellate counsel provided ineffective assistance when she failed to raise a claim that Appellant was denied his Sixth Amendment right to counsel when he was allegedly forced to proceed <u>pro se</u>. This matter arose during the course of a pre-trial hearing held on September 13, 2012.  At that time, Appellant was represented by private counsel, Stephen O'Hanlon, Esq., at 355-2012, and by appointed counsel, Daniel Nelson, Esq., at 1228-2012.  The hearing was held to address the attorneys' motions to withdraw as Appellant's counsel.

At the hearing, Attorney O'Hanlon testified that there were financial issues with the attorney-client relationship.  He was hired to represent Appellant at 355-2012, before Appellant was charged with numerous additional counts at 1228-2012.  N.T., 9/13/12, at 3.  Appellant was unable to pay the additional fees required to cover both cases.  <u>Id.</u>  Second, Attorney O'Hanlon stated that "every time" he "appeared in court, whether it was for pretrial or when we had the continued motions to suppress with Your Honor, . . . [Appellant] thought that he was there to represent himself and had made it near impossible for me to represent him."  <u>Id.</u> Attorney O'Hanlon also complained that Appellant repeatedly requested that he file frivolous motions, which caused additional tension between them.  As Attorney O'Hanlon explained:

[E]very time I have said that I wasn't going to do that, I communicated with him fully as to the reason for me not doing it, but every time I've s[een] him up in Centre County [Correctional Facility] he would call me a d*** head, a f***ing cracker, a c*** sucker, everything like that.  So it . . . has made attorney/client communication impossible.

<u>Id.</u> at 4.  Attorney O'Hanlon further indicated that he had met with Appellant three times, and had written to him on [at] least thirteen occasions.  <u>Id.</u> at 6.

Appellant responded with specific complaints regarding Attorney O'Hanlon's performance, and essentially indicated that he agreed that the attorney/client relationship had soured and, thus, he did not oppose Attorney O'Hanlon's motion to withdraw his representation.  <u>Id.</u> at 6-9.  As a result, the trial court granted Attorney O'Hanlon's motion to withdraw.  <u>Id.</u> at 10.

The court then presented Appellant with a choice: that he proceed either with Attorney Nelson as appointed counsel for the consolidated docket, or pro se. Id.  The court informed Appellant that, if he proceeded pro se, it would permit him to refile any motion that had been rejected due to the ban on hybrid representation. Id. at 11.  Appellant responded that he did not feel comfortable proceeding pro se. Id. at 12.  However, he also indicated his displeasure with Attorney Nelson, asserting that Attorney Nelson, as appointed counsel, was essentially working for the same government that was prosecuting him.  Id. at 13.  He also alleged communication problems with Attorney Nelson.  Id. at 12-14.  Attorney Nelson responded:

> Your Honor, there is a motion to withdraw.  As I recall, two prior occasions where we have been in front of different judges from this court, criminal jury selection, criminal pretrial conference, my client has raised irreconcilable differences.  He's raised my ineffective assistance.  He's raised my inexperience in these matters.  [A]t each juncture along those lines, I've stayed willing to represent [Appellant].

Id. at 18.  Attorney Nelson then indicated that Appellant specifically requested that he withdraw.  Id.  He continued as follows:

> I actually do agree with [Appellant].  [There exist] significant irreconcilable differences . . . in this particular case.
> It's never happened to me before in my representation of individuals in Centre Coutny but it is in this case.  And it really came to a head at the point in time I shared similar experiences to Mr. O'Hanlon and what he was representing to the court, although I haven't been insulted or maligned.  He hasn't done anything like that to me.  But with regard to advice, that dynamic is supposed to take place between attorneys and clients, [but] there is an absolute and complete breakdown.
> I offer advice, [Appellant] listens to that advice, he usually responds to that advice, and then even when we agree on some course . . . it is completely reversed.  I'm then the liar in this matter and then I'm accused of being ineffective—or I'm accused of offering ineffective assistance to [Appellant].

> \*\*\*

> This is classic in my interactions with [Appellant].  [F]rom the very first time that I sat down with him to where we stand here and now, I'm not so sure that we are in the face of an election where [Appellant] is actually choosing to proceed pro se because he chooses to be his own attorney and he wants to be a true pro se litigant.

I think we're much, much closer to the forfeiture of counsel.  He has done this numerous times.  He hasn't worked with any of them.  We have all cited same or

similar concerns with our interactions.  And, truth be told, no matter how this goes, even if I stay on this case, he is going to accuse me of things I didn't do.

There is no doubt in my mind.  It's already happened once.  And no matter what our communications are, [Appellant] does not represent them as they actually happened.  There is no dynamic here with my client at all.  I'm not sure how we could possibly prepare.

Id. at 19-21.

Appellant responded that he was entitled to an attorney who he could "trust to guard [his] life" and that he "should be able to work with that person to an extent."  Id. at 34.  He indicated his belief that Attorney Nelson was essentially outclassed by the prosecutor, A.D.A. Nathan Boob, and that he needed someone more willing or capable to do battle against the Commonwealth.  Id. at 35.  Appellant also asserted that his previous difficulties with appointed and private counsel were not a ploy to delay justice.  Id.  The trial court ultimately concluded as follows:

The [c]ourt does find that there has been at least two court[-]appointed attorneys, there has been one private counsel that this court has dealt with, and there has also been conversations with [other private attorneys].  At this time the court does find that you forfeited your right to counsel based on your conduct with these attorneys and that you will proceed pro se.

Id. at 37.

Appellant now contends that Attorney Muir, his prior appellate counsel, was ineffective for failing to raise a claim during his direct appeal that the trial court deprived him of his Sixth Amendment right to counsel by deeming that right to have been forfeited.  Appellant argues that his claim had arguable merit because

a thorough review of the September 13, 2012 hearing demonstrates the [t]rial [c]ourt was never presented with competent evidence of [Appellant's] conduct to warrant or justify the finding that he had forfeited his right to counsel and was thus forced to defend himself for pre-trial motions and trial in two complex drug cases.  In fact, no evidence was presented to the [t]rial [c]ourt.  [Appellant's] conduct was commented on by all involved, but no transcripts of prior proceedings indicating disruptive behavior were admitted into evidence, and no testimony under oath was elicited indicating [Appellant's] treatment of or ability to work with his prior counsel.  In short, [Appellant] was not afforded the right to challenge the statements made against him in an effort to show the trial court he had not conducted himself in such a manner as to forfeit his right to counsel.  The right [to] the assistance of counsel in a criminal trial is a fundament right.  It should not be deprived on the basis of forfeiture absent competent evidence of a

13

defendant's "extremely serious misconduct" or "extremely dilatory conduct." United States v. Thomas, 357 F.3d 357, 362 (3d Cir. 2004) (quoting [United States v.] Goldberg, 67 F.3d [] 1092, 1100-02 (3d Cir. 1995)[]).  In the case sub judice, no such evidence was presented prior to the trial court['s] entering an order that [Appellant's] right to counsel was forfeited.

Appellant's Brief at 10-11.

Our Supreme Court follows the [United States v.]Goldberg[,67 F.3d 1092 (3d Cir. 1995)] view of forfeiture.  See Commonwealth v. Lucarelli, 971 A.2d 1173, 1179 (Pa. 2009).  Thus, a defendant's right to counsel is forfeited when he engages in 1) extremely serious misconduct; or 2) extremely dilatory conduct.  Id.

Appellant's ineffectiveness claim lacks arguable merit.  There was clearly a record made of Appellant's misconduct toward both appointed and private counsel, demonstrated through the testimony of both Attorneys Nelson and O'Hanlon.  Their testimony adequately demonstrated both Appellant's extreme misconduct in the attorney/client relationship, including false accusations of wrongdoing and abusive communications by Appellant, as well [as] evidence of extreme dilatory conduct, such as Appellant's repeated requests for the filing of frivolous motions, and his repeated filing of pro se motions while represented by counsel.  Because we conclude that such conduct satisfies the Goldberg standard, we hold that Appellant's first [ineffective assistance of counsel ("IAC")] claim lacks arguable merit.[]

Appellant's specific complaint that the testimonies of Attorneys Nelson and O'Hanlon were not made under oath is waived.[]  Appellant did not raise this claim in his Rule 1925(b) statement and, as a result of that [omission], the issue was not addressed in the PCRA court's opinion.  See Appellant's Rule 1925(b) statement, 10/30/17, at 1.  "Any issues not raised in a 1925(b) statement will be deemed waived."  Commonwealth v. Lord, 719 A.2d 306, 309 (Pa. 1998).  In any event, we would question the merit of such a claim.  The Rules of Professional Conduct dictate that a "lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal . . . ."  MRPC Rule 3.3(a)(1) (emphasis added).  Moreover, Appellant provides no case law supporting his assertion that an attorney must be sworn in while litigating a motion to withdraw as counsel.

(Doc. No. 10-1 at 6-12 (footnotes omitted).)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  This provision, however, is not absolute, as a defendant may lose his or her right to counsel

through forfeiture or waiver.  See United States v. Leggett, 162 F.3d 237, 249 (3d Cir. 1998).

These "are separate, distinct concepts."  See United States v. Thomas, 357 F.3d 357, 362 (3d Cir.

2004).  Waiver of counsel encompasses the "intentional and voluntary relinquishment of a

known right."  See United States v. Goldberg, 67 F.3d 1092, 1099 (3d Cir. 1995).  A defendant's

waiver of the right to counsel "must be knowing, voluntary and intelligent."  See Thomas, 357

F.3d at 362.  If a defendant chooses to waive his right to counsel, the trial court "must undertake

an affirmative on-the-record colloquy to explain to the defendant the possibility of waiver and

give the defendant 'an awareness of the dangers and disadvantages inherent in defending

oneself.'"  See id. (quoting United States v. Welty, 674 F.2d 185, 188 (3d Cir. 1982)); see also

Faretta, 422 U.S. at 835.  A defendant's waiver of counsel is valid "only where the [trial] court

judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was

understanding and voluntary."  See Welty, 674 F.2d at 189.  "[T]o the extent that the defendant's

actions are examined under the doctrine of 'waiver,' there can be no valid waiver of the Sixth

Amendment right to counsel unless the defendant also receives Faretta warnings."[6]  Goldberg,

67 F.3d at 1100.

---

[6] There is "no talismanic formula" for a Faretta inquiry, but the United States Court of Appeals
for the Third Circuit has set forth fourteen (14) questions as a "useful framework" for such.  See
United States v. Peppers, 302 F.3d 120, 135-37 (3d Cir. 2002).  As the Third Circuit has stated,

> [t]hese questions are intended to gauge a defendant's understanding of the
> challenges and risks involved in representing himself pro se, and inquire into such
> areas as his familiarity with the Federal Rules of Evidence, the Federal Rules of
> Criminal Procedure, the nature of the crimes he is charged with, the possible
> penalties he faces, and the fact that an attorney would be more skilled in identifying
> defenses, presenting evidence, and generally litigating the case.

United States v. Kosow, 400 F. App'x 698, 701 (3d Cir. 2010).  Rule 121 of the Pennsylvania
Rules of Criminal Procedure provides that, at a minimum, a trial court should address the
following during a Faretta colloquy:

On the other hand, "forfeiture results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." See id. A trial court may conclude that a defendant has forfeited the right to counsel after engaging in "extremely dilatory conduct" or "extremely serious misconduct." See id. at 1101-02. A court can find that forfeiture of counsel has occurred "regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding pro se." See id. at 1101. Forfeiture of counsel can occur "based on a defendant's verbal abusiveness, threats to harm an attorney, and attempts to make an attorney engage in unethical activities." See Thomas, 357 F.3d at 362-63 (citing United States v. McLeod, 53 F.3d 322 (11th Cir. 1995)). The United States Court of Appeals for the Third Circuit has concluded that forfeiture of counsel also occurs in situations where a defendant tears up correspondence from an attorney, refuses to cooperate, and attempts to force his or her attorney "to file several meritless, frivolous claims." See id. at 363.

---

(a) that the defendant understands that he or she has the right to be represented by counsel, and the right to have free counsel appointed if the defendant is indigent;

(b) that the defendant understands the nature of the charges against the defendant and the elements of each of those charges;

(c) that the defendant is aware of the permissible range of sentences and/or fines for the offenses charged;

(d) that the defendant understands that if he or she waives the right to counsel, the defendant will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules;

(e) that the defendant understands that there are possible defenses to these charges that counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently; and

(f) that the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Pa. R. Crim. P. 121(A)(2).

In the instant case, it is clear from the state court record that Petitioner never received a Faretta hearing and never waived his right to counsel.  Petitioner, however, has not demonstrated prejudice from Attorney Muir's failure to raise this claim on direct appeal.  As the Superior Court set forth in its thorough opinion, the trial court found that Petitioner had forfeited, not waived, his Sixth Amendment right to counsel based upon his conduct with his attorneys.  (Doc. No. 10-5 at 9.)  The record reflects that Petitioner was verbally abusive to Attorney O'Hanlon and attempted to have him file several meritless motions.  (Doc. No. 21-20 at 4-5, 7.)  Moreover, Petitioner accused Attorney Nelson of lying and being ineffective.  (Id. at 19-21.)  Attorney Nelson represented further that he would offer advice, Petitioner would listen to that advice, and then "even when [they agreed] on some course," Petitioner would change his mind and not listen to Attorney Nelson.  (Id. at 20.)  Attorney Nelson argued that Petitioner had engaged in "extreme misconduct" warranting forfeiture of counsel because he "simply [could not] work with [the] multitude of attorneys" who had appeared on his behalf.  (Id. at 33.)  The trial court noted that, as of September 2012, Petitioner had had at least two (2) court-appointed attorneys, one privately retained attorney, and had engaged in conversations about potential representation with another attorney.  (Id. at 38.)  Such behavior is akin to the behavior of the defendant noted by the Third Circuit in Thomas.  See Thomas, 357 F.3d at 363.  There, the Third Circuit upheld the trial court's conclusion that the defendant forfeited his right to counsel because he had been verbally abusive to counsel, refused to cooperate, and attempted to force them to file meritless claims. See id.  Moreover, "most critically, [the defendant, like Petitioner] engaged in this sort of misconduct not once, but in relationships with four attorneys."  See id.  Thus, even if Attorney Muir had raised a claim regarding the trial court's failure to provide a Faretta hearing, it is clear

17

that the state appellate courts would have upheld the trial court's conclusion that Petitioner had

forfeited his Sixth Amendment right to counsel.

Upon review of the record, the Court concludes that the Superior Court's disposition of

Petitioner's claim did not result in a decision contrary to, or involve an unreasonable application

of, clearly established federal law and did not result in a decision based on an unreasonable

determination of the facts in light of the evidence presented during state court proceedings.

Petitioner has failed to demonstrate that he was prejudiced by Attorney Muir's allegedly

ineffective performance because he has not demonstrated a reasonable likelihood that his direct

appeal would have been resolved differently if not for Attorney Muir's alleged deficiencies.  See

Mannino, 212 F.3d at 845.  Accordingly, Petitioner's first ground for relief will be denied.

### C.     Ground Two

In Ground Two, Petitioner asserts that Attorney Muir was ineffective for failing to assert

on direct appeal a claim that Petitioner was improperly removed from jury selection.  (Doc. No.

1 at 19.)  Petitioner maintains that Attorney Muir's failure to raise this claim prejudiced him

because "it is more likely than not that this claim would have resulted in a reversal of the

conviction and sentence."  (Id.)

With respect to this claim, the Superior Court of Pennsylvania stated:

> Next, Appellant argues that the trial court improperly removed him from
> the jury selection process by 1) ostensibly forcing him to allow stand-by counsel to
> select the jury panel, when Appellant believed that he was pro se during jury voir
> dire and, later, 2) physically removing him from jury selection.  As a result,
> Appellant asserts that the trial court violated his Sixth Amendment rights, and that
> Attorney Muir was ineffective for failing to raise related claims on direct appeal.
> Appellant's second IAC issue is clearly comprised of two distinct claims.
>
> As discussed with regard to his first IAC claim, the trial court determined
> that Appellant forfeited his right to counsel, permitted Attorneys O'Hanlon and
> Nelson to withdraw, and appointed Attorney Nelson as standby counsel.  However,
> at the beginning of jury selection, the trial court, now with a different judge

18

presiding, proceeded as if Appellant was represented by Attorney Nelson, and as if the forfeiture of counsel had never occurred.  See N.T., 12/3/12, at 9.  Appellant objected, stating, "He is not my counsel.  Let's go pick the jury."  Id.  In response, the court attempted to conduct a waiver-of-counsel colloquy.  Id. at 9-10.  Appellant, clearly growing impatient as the court tried to conduct the colloquy, again stated, "I don't have counsel.  I'm pro se.  I don't know what changed today."  Id. at 11.

After a short break, the court then stated, "What I am faced with is an order that appoints Mr. Nelson as counsel."  Id. at 12.  The court did not identify the order to which it was referring.  As described with respect to Appellant's first IAC claim, although the court initially appointed Attorney Nelson to be Appellant's counsel, he successfully motioned to withdraw, and was then appointed to be standby counsel.  See Opinion and Order, 9/19/12, at 6 ¶ 3 ("Attorney Daniel J. Nelson's Motion to Withdraw is GRANTED IN PART.  Attorney Nelson will remain on as Standby Counsel.").  Appellant indicated that he had never received any order reappointing Attorney Nelson as full counsel.  N.T., 12/3/12, at 15 ("I never received this order, so I didn't read any order.  I am the defendant in this case.  This is my case.  This is not his case.  I asked him to be removed.  He is standby counsel.  He was ordered to be standby counsel.").  Nevertheless, the court responded, "If you cannot remain silent during the proceeding and allow Mr. Nelson to represent him, then you will be removed."  Id. at 16.  Ultimately, Attorney Nelson conducted voir dire over Appellant's repeated objections.

Initially, we begin our analysis by noting that Appellant was mistaken that he held pro se status during voir dire, as the new trial judge had reappointed Attorney Nelson to represent him prior to that proceeding, despite having previously determined that Appellant had forfeited his right [to] counsel, as discussed supra.  See Order, 11/29/12, at 1 ("[Appellant's] request for court-appointed counsel is GRANTED.  The [c]ourt is mindful that by Opinion of Judge Jonathan Grine, dated September 19, 2012, [Appellant] was deemed to have forfeited his right to counsel.  Now, on the cusp of jury selection, and in advance of trial, the [c]ourt considers [Appellant's] plea for representation to be critical to justice, and therefore re-appoints [A]ttorney Daniel Nelson, [Appellant's] previously appointed, and current standby counsel.["]).  Thus, it was proper for Attorney Nelson to conduct voir dire as Appellant's court-appointed counsel.  Accordingly, we conclude the first part of Appellant's second IAC claim lacks arguable merit, as the factual basis for it is unsound.

Regarding the second part of Appellant's second IAC claim, the trial court physically removed Appellant from voir dire after the following occurred in the presence of the jury pool:

[Appellant]:      Your Honor, can they take me back to jail?

The court:        No.  I would like for you to stay with us Mr. Adams.

19

[Appellant]:        I need to go back to jail.  I had enough of this.

The court:        Members of the prospective panel, if you heard that comment, I would ask that you completely disregard what was just said. If you cannot disregard that—I need to know if that prejudices you in any way.  Please raise your hand.

    I certainly understand.  Raise your hand again.

    Juror No. 8, Juror No. 14, anyone else?  All right.

        . . .

[Appellant]:        I don't agree with this situation.  I really don't. They're forcing me to trial.  It's not fair.  I don't have a fair and impartial judge.  Now they're going to give a fair impartial jury[?]

The court: Will you take him back to the hallway please?

[Appellant]:        Take me back to jail.  This is not a jury of my peers. Ya'll going to handcuff me or are you going to handcuff me in the hallway?  Ya'll are not a jury of my peers.  I'm black.

(Whereupon, [Appellant] was escorted out of the courtroom at this time.)

N.T., 12/3/12, at 48-49.

As is apparent from the record, supra, Appellant essentially demanded his own removal from the voir dire proceeding.  On this basis alone, his IAC claim lacks arguable merit.  Appellant's counsel cannot be deemed ineffective for failing to argue that his Sixth Amendment right to be present at voir dire had been violated when Appellant himself requested, on three occasions in quick succession, to be removed from the proceeding and taken back to jail.

Alternatively, we also find this claim lacks arguable merit because the trial court did not abuse its discretion by removing Appellant from voir dire given his repeated, disruptive outbursts.

The United States Constitution[,] the Pennsylvania Constitution[,] and [the] Pennsylvania Rules of Criminal Procedure 1117(a) guarantee the right of an accused to be present in the courtroom at every stage of a criminal trial. However, in Illinois v. Allen, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970), the United States Supreme Court determined that the right to be present in the courtroom is not absolute and explicitly held,

20

that a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.  Once lost, the right to be present can, of course, be reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings.

Id. at 343, 90 S. Ct. at 1061-1061, 25 L. Ed. 2d at 359.  See also, Commonwealth v. Africa, 466 Pa. 603, 353 A.2d 855 (1976).

Commonwealth v. Basemore, 582 A.2d 861, 866-67 (Pa. 1990) (footnotes omitted).

Appellant argues that he "was not as disruptive during the jury selection process as the defendant in Basemore."  Appellant's Brief at 12.  He contends that his "expression of frustration" did not constitute conduct that justified his removal. Id.  By way of comparison, in Basemore, immediately prior to voir dire, the defendant essentially promised to make a mockery of the proceedings.  Basemore, 582 A.2d at 867.  He lived up to that promise:

When questioned by the trial judge, [the defendant] was unresponsive and attacked the trial judge asking him if he was "out for blood," and if he had "wax" in his ears.  [The defendant] threatened to disrupt the proceedings a second time and was warned by the trial judge that if he did so he would be removed from the courtroom.

When jury selection resumed, [the defendant] made a third outburst, addressing a prospective juror as follows:

I have a question.  Miss, this guy is not my lawyer.  I fired him for ineffective counsel.  I have civil suits filed against him.  I've had him under surveillance for three months.  They will not give me another lawyer.  They trying to make me take their lawyer.  He's been lying the whole entire time.  He is not my counsel.  He have given me no paperwork.  I do not know what's going on and he is not my lawyer.  I'm asking, I'm begging do not take part in this charade because this man is not my lawyer.  He is not.  I fired him. It's on the record but they will not give me another counsel.  They trying to tell me I have to take him when I don't have to do anything. He was going to sidebar quite a few times.  Wouldn't let me know. He told me I do not have any rights.  He told me to take a deal for life in prison for something I did not do.  I'm begging you [to] not to take part in this charade.

21

*** 

> Mr. Stein is not my lawyer.  He's not my lawyer.  Miss, don't even listen to what he's saying.  Don't waste your time.  If you take part in this charade, my blood will be on you[r] hands.  He is not my lawyer.  I've had him defaced.

After a discussion in chambers with counsel, the trial judge in open court again warned [the defendant] that if he disrupted the proceedings he would be removed from the courtroom.  The trial judge stated:

> We are going to proceed with one more juror.  If you disrupt the <u>voir dire</u> with regard to that juror, you will be removed from this courtroom and your trial will proceed in your absence.

Another prospective juror was questioned by counsel and [the defendant] blurted out: "I do not have a lawyer, and this man is—they trying to get me to take that character when I do not have a lawyer and it's good that you're going to be dismissed.  Glad to hear it and you can let him go[."]  The juror was excused and [the defendant] was, pursuant to the trial judge's earlier warning, removed from the courtroom.

<u>Id.</u> at 867-68 (citations omitted).

Instantly, Appellant argues that, unlike the defendant in <u>Basemore</u>, he did not "verbally attack the judge, berate prospective jurors, or make it clear that he intended to disrupt the proceedings."  Appellant's Brief at 12.  Initially, we reject Appellant's characterization that relief is warranted if his conduct did not reach the level of disruption observed in <u>Basemore</u>.  We agree with Appellant that his conduct did not quite reach the level of disruption at issue in that case; however, that does not mean that his conduct fell short of the standard for removal.  Appellant has not provided this Court with any case law suggesting that the disruptive behavior addressed in <u>Basemore</u> constitutes the minimum bar for removal.  Indeed, in our view, Basemore's behavior went far beyond what was required to remove a defendant from trial under the <u>Allen</u> standard.

Here, the trial court repeatedly warned Appellant that he would be removed if his behavior continued to be disruptive.  <u>See</u> N.T., 12/3/12, at 6, 8, 12, 15-16, 20-21, 23.  Nevertheless Appellant continued to make statements out of turn that were both disrespectful and disruptive to the proceedings and the trial court, both inside and outside the presence of the jury pool.  <u>See id.</u> at 5 (feigning ignorance), 8-9 (questioning the integrity of the court), 10 (same), 11 (feigning inability to hear the judge), 13 (inviting the court to hold him in contempt), 14-15 (accusing the court of failing to follow[] the appropriate legal process), 16 (making first request to be taken back to jail), 22 (refusing to participate in the colloquy to proceed <u>pro se</u>,

despite clearly seeking to proceed pro se), 24 (making second and third requests to be taken back to jail), 48-49 (disrupting the jury selection process, as reproduced supra).  Thus, Appellant continued to be disruptive and disrespectful, even after the trial court repeatedly warned that such conduct could result in his removal.  As such, we ascertain no error or abuse of discretion in the trial court's obviously reluctant decision to remove Appellant from voir dire when his disruptive behavior continued unabated in front of the prospective jury pool.  Indeed, we commend the trial court for its patients, its repeated attempts to satiated Appellant's concerns, and its clear intent to keep Appellant present for jury selection despite his repeated transgressions.  As such, we conclude that Appellant's collateral IAC claim lacks arguable merit, as the trial court did not err when it physically removed him from the courtroom during voir dire.

(Doc. No. 10-5 at 12-19.)

The United States Supreme Court has noted that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause [of the Sixth Amendment] is the accused's right to be present in the courtroom at every stage of his trial."  See Illinois v. Allen, 397 U.S. 337, 338 (1970) (citing Lewis v. United States, 146 U.S. 370 (1892)).  Voir dire "is a critical stage of the criminal proceeding, during which the defendant has a constitutional right to be present."  See Bable v. Corbin, No. 11-145, 2013 WL 5514283, at *6 (W.D. Pa. Oct. 4, 2013) (citing Gomez v. United States, 490 U.S. 858, 873 (1989)).  However, the Allen Court held that

a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

Allen, 397 U.S. at 343.  This right may be "reclaimed as soon as the defendant is willing to conduct himself consistently with the decorum and respect inherent in the concept of courts and judicial proceedings."  See id.

In the instant case, Petitioner has not demonstrated prejudice from Attorney Muir's failure to assert on direct appeal a claim that Petitioner was improperly removed from jury selection.  As an initial matter, the Superior Court correctly determined that Petitioner was not

proceeding pro se during voir dire.  Despite Petitioner's protestations, the record reflects that he requested the appointment of counsel and his request was granted prior to jury selection, despite the trial court's previous determination that Petitioner had forfeited his right to counsel.  (Doc. No. 21-24 at 3-16.)  Moreover, the record demonstrates that the trial court repeatedly warned Petitioner that he would be removed from the courtroom if he continued to be disruptive; nevertheless, Petitioner continued to make disrespectful and disruptive comments both in and out of the presence of the jury pool.  (See generally Doc. No. 21-24.)  Furthermore, the record reflects that Petitioner was not removed from the courtroom until jury selection was all but completed and that the jury was impaneled right after his removal.  (Id. at 50-53.)

Upon review of the record, the Court concludes that the Superior Court's disposition of Petitioner's claim did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented during state court proceedings. Petitioner has failed to demonstrate that he was prejudiced by Attorney Muir's allegedly ineffective performance because he has not demonstrated a reasonable likelihood that his direct appeal would have been resolved differently if not for Attorney Muir's alleged deficiencies.  See Mannino, 212 F.3d at 845.  Accordingly, Petitioner's second ground for relief will be denied.

### D.     Ground Three

In Ground Three, Petitioner maintains that Attorney Muir was ineffective for failing to assert on direct appeal that Petitioner's right to a speedy and prompt trial was violated.  (Doc. No. 1 at 20.)  According to Petitioner, this issue had merit "and could have[] reasonably resulted in all of the charges being dismissed with prejudice."  (Id.)  With respect to this claim, the Superior Court of Pennsylvania stated:

24

Next, Appellant argues that appellate counsel was ineffective for failing to raise the claim that his right to a speedy trial pursuant to Pa. R. Crim. P. 600 was violated.  In support of this claim, [Petitioner] argues that when he filed a Rule 600 motion on August 14, 2012, more than "180 days had passed from the time charges were brought against him and he had not been brought to trial."  Appellant's Brief at 15.  Appellant then argues that the trial court's determination that Rule 600 had not been violated at that time was unreasonable and, therefore, that appellate counsel was ineffective for failing to raise a related Rule 600 claim during his direct appeal.  Id. at 15-16.

This claim lacks merit on its face.  There is no appellate remedy for a pretrial violation of Rule 600's 180-day rule.  Rule 600(B)(1) provides that "no defendant shall be held in pretrial incarceration in excess of . . . 180 days from the date on which the complaint is filed . . . ."  The remedy for a violation under subsection B of Rule 600 is set forth in Rule 600(D)(2), which is release by the trial court on nominal bail.  Only violations pursuant to subsection A's 365-day rule afford the remedy of a dismissal of charges with prejudice.  See Rule 600(D)(1); see also Commonwealth v. Abdullah, 652 A.2d 811, 813 (Pa. 1995) (holding that Rule 1100 (the prior version of Rule 600) "does not provide a remedy for a defendant who is improperly denied release on nominal bail").  Accordingly, after Appellant was tried and sentenced, any pretrial violation of Rule 600's 180-day rule was rendered moot.  Accordingly, we will not deem appellate counsel ineffective for failing to seek relief for a claim, meritorious or not, where no remedy is available.

(Doc. No. 10-5 at 19-20.)

Upon review of the record, the Court concludes that the Superior Court's disposition of Petitioner's claim did not result in a decision contrary to, or involve an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[7]  As the Superior Court correctly set forth, although Petitioner was held in custody for more than 180 days from the date on which the complaints were filed, there was no remedy available to him.

---

[7] The Court agrees with Respondents that Petitioner did not argue before the Superior Court or this Court that his speedy trial rights under the Sixth Amendment to the United States Constitution were violated.  (Doc. No. 21 at 27 n.2.)  Consequently, "the only federal claim before this Court in ground three is that [Petitioner] was denied his right to counsel under the Sixth Amendment due to the alleged ineffectiveness of Attorney Muir for not raising an issue on direct appeal that [Petitioner's] speedy trial tights under Pa. R. Crim. P. 600 were violated."  (Id.)

Moreover, Petitioner was tried well within 365 days from the filing of the first complaint; therefore, Attorney Muir had no basis upon which to argue that the charges against Petitioner should have been dismissed with prejudice pursuant to Rule 600(A).  Petitioner has not overcome the presumption of effective assistance by appellate counsel because his speedy trial claim is not stronger than the Alleyne claim presented by Attorney Muir.  See Smith, 528 U.S. at 285.  Moreover, Petitioner has not demonstrated that the appellate court would have resolved his case differently but for Attorney Muir's failure to raise this claim.  See Mannino, 212 F.3d at 845.  Accordingly, Petitioner's third ground for relief will be denied.

### E.      Request for an Evidentiary Hearing

Petitioner also requests that the Court hold an evidentiary hearing.  (Doc. No. 1 at 21.) Section 2254(e)(2)(B) provides that "the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--. . . (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  See 28 U.S.C. § 2254(e)(2)(B).  Upon consideration of the record, the Court concludes that Petitioner has not made the requisite showing.  Accordingly, his request for an evidentiary hearing will be denied.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  See 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Accordingly, reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA. Thus, the Court will decline to issue a COA, as Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." <u>See</u> 28 U.S.C. § 2253(c)(2); <u>see</u> <u>also</u> <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

## V.     CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied, and the Court will not issue a COA. An appropriate Order follows.